NOT FOR PUBLICATION                                      (Docket Nos. 11, 13, 18)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| KAREN FRAME, | : | |
| | : | |
| Plaintiff, | : | Civil No. 09-2673 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PHIL LOWE, COUNTY OF SAN LUIS | : | |
| OBISPO DEPT. OF CHILD SUPPORT | : | |
| SERVICES, JAMES VAN HORN, and | : | |
| PENNSYLVANIA BOARD OF CHILD | : | |
| SUPPORT ENFORCEMENT, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

This dispute arises out of divorce proceedings and collateral litigation between Plaintiff Karen Frame and Defendant James Van Horn spanning some twenty years. Presently before the Court are three separate motions to dismiss by Defendants Phil Lowe and County of San Luis Obispo Department of Child Support Services (Docket No. 11), Defendant Pennsylvania Board of Child Support Enforcement (Docket No. 13), and Defendant James Van Horn (Docket No. 18). For the reasons expressed below the Motions are granted in part and denied in part.

**I.      BACKGROUND**

Though the background of this case is quite long and filled with voluminous court proceedings, a complete recitation of this history is necessary to understand the issues before the

1

Court.  Thus, the extensive twenty years of litigation is presented here.

Karen Frame and James Van Horn were married on May 10, 1980 in Camden, New Jersey.  After having three children, they separated in January 1988 and were divorced in July 1994 in Bucks County, Pennsylvania.  Initially after the separation, the children remained in the marital home and Frame and Van Horn spent equal time with them.  Around October 1988, Van Horn moved to California were he continues to reside.  From October 1988 to January 1, 1989, the children remained in Frame's custody in Bucks County.

On January 1, 1989, pursuant to a Pennsylvania Court Order, Frame took the children to California for a three month visit with Van Horn.  He was to return the children on April 1, 1989, but did not in fact return them until May 17.  An additional hearing was then held in Pennsylvania on May 23, 1989, which resulted in joint legal custody and primary physical custody with Van Horn.  Frame was also ordered to pay child support to Van Horn through a voluntary wage attachment in Pennsylvania.  The children remained with Frame from May 17 until August 31, 1989.

From that date until June 1996, the children lived with Van Horn in California.  During that time, Frame paid child support and alimony by voluntary wage execution.  On February 18, 1992, Frame and Van Horn agreed to defer child support issues pending an equitable distribution hearing, and a consent order to that effect was entered by the Court of Common Pleas of Bucks County.  In or around April 1992, the Pennsylvania courts relinquished jurisdiction of custody only; however, Pennsylvania continued to collect child support and alimony from Frame.

Around June 1992, Frame traveled to California to investigate allegations from the children that Van Horn's live-in girlfriend's father was molesting them.  Based on these

2

allegations, Frame had the children evaluated by a psychologist in Pennsylvania who recommended that they children be removed from Van Horn's custody.  A psychologist in California also evaluated the children and made the same recommendation.

Notwithstanding, a California court permitted Van Horn to retain official custody, but ordered that the children be removed from the home of his live-in girlfriend's parents.  The California court also entered a child support order, dated December 31, 1992.  On August 25, 1993, Van Horn registered the California child support order in Bucks County.  Frame subsequently filed a motion to vacate the California order.

On September 16, 1993, the Court of Common Pleas issued a child support order that reconciled the California child support order with the Pennsylvania order and added arrears from California to Frame's wage execution order.  Van Horn did not appeal the order.

On December 13, 1993, the Obispo Child Support Office closed the California child support case.  In March 1994, the Obispo office sent Frame a copy of an audit that determined that no child support arrears existed.

On July 20, 1994, during an equitable distribution hearing for divorce in Pennsylvania, Frame and Van Horn litigated issues of child support and consented to credit Frame's child support account for periods of time during which the children were in her custody.  On November 6, 1995, Van Horn appeared in Bucks County and objected to credits to Frame's child support account for medical reimbursements and for time the children were in her custody.  The court issued the credits nonetheless.  On March 26, 1996, the Court of Common Pleas again issued a credit to Frame's account for periods the children were in her custody.

On June 14, 1996, Van Horn permitted the children to board a plane to New Jersey with

Frame.  They have resided continuously in New Jersey ever since.

Notwithstanding, Van Horn continued to seek child support from Frame in the California courts.  In fact, not only did he continue to seek child support, he also sought alimony from Frame even though he remarried on August 16, 1997.

As a result of the change of custody in 1996, Frame petitioned the Pennsylvania court to extinguish her wage execution order for child support.  Thus, on October 28, 1996, the Court of Common Pleas, having no objections from Van Horn, issued an order to suspend Frame's child support.  However, on December 19, 1996, Van Horn petitioned the California court to issue an order requiring  Frame to pay child support arrears retroactive to December 31, 1992, based on the California support order.  Van Horn seemingly did not tell the California court of the litigation in Pennsylvania on September 16, 1993 relating to the same issues.  The California court then issued an order for Frame to pay $21,555 in child support arrears and to continue paying child support to Van Horn.

On May 21, 1997, the Court of Common Pleas terminated Frame's child support obligations.  The court further ordered Van Horn to pay Frame $2,817 for overpayments.  Nevertheless, Van Horn reopened the California support case in New Jersey on June 30, 1997, and initiated a petition for enforcement of the California arrears.  On September 4, 1997, the New Jersey court denied enforcement of the California support arrears because of a dispute between Pennsylvania and California records.  The case was dismissed by the Superior Court of New Jersey, Family Division.

Undeterred, Van Horn filed papers in California in July 1998 seeking child support arrears.  Despite  Frame's representations to the California court that it lacked jurisdiction over

the child support issues, the court issued an order on March 25, 1999 for judgment in the amount of $45,308 against Frame and in favor of Van Horn.  Van Horn then had the judgment entered in Mercer County, New Jersey on October 6, 1999.  Frame maintains that in addition to Van Horn's collection efforts in New Jersey, he also sought collection in California with the help of the San Luis Obispo Child Support Office.  The result of these efforts was a judgment against Frame in New Jersey of $55,517.17 and a child support arrears in California of $92,800.

On September 8, 2000, Frame filed a child support petition with the Superior Court of New Jersey.  The petition was forwarded to California.  On October 27, 2000, Frame and Van Horn entered into a consent agreement in the Superior Court for the children to remain in Frame's custody.

On June 14, 2001, the California court issued a child support order for Van Horn to pay child support to Frame for two of the three children.  The court denied retroactive support to September 8, the date of filing.

On June 2, 2009, Plaintiff  Frame commenced the present action under the Court's diversity jurisdiction.  On June 30, 2009, she filed a three count Amended Complaint.  In Count One, Plaintiff demands declaratory judgment on thirteen grounds:

1) declaring the children residents of New Jersey;

2) affirming the Pennsylvania order dated September 16, 1993;

3) declaring Van Horn in contempt of court for failure to comply with court ordered child support and declaring that he provide full financial information and a case information statement;

4) requiring Van Horn pay back child support;

5) requiring Van Horn to contribute to the children's college education in lieu of

retroactive child support;

6) declaring any and all California support orders entered post-1996 to be null and void;

7) declaring all New Jersey orders, liens, and writs of execution to be null and void;

8) declaring any and all child support orders and/or judgments against Plaintiff post-1996 to be null and void;

9) ordering Van Horn to reimburse Plaintiff for all monies seized/taken from Plaintiff post-1996;

10) enforcing the order entered October 26, 1989 by the Pennsylvania Court of Common Pleas;

11) for all costs and legal fees associated with filing the Complaint;

12) declaring New Jersey to be the exclusive jurisdiction for all further proceedings in the dispute; and

13) any and other such relief that is just and equitable.

Amd. Compl. at ¶ 70.

In Count Two, Plaintiff alleges that Van Horn committed fraud in seeking and obtaining child support monies and judgments after the children moved to New Jersey in 1996.  In Count Three, Plaintiff alleges that Phil Lowe (as Director of the County of San Luis Obispo Department of Child Support Services) and the County of San Luis Obispo Department of Child Support Services (DCSS) violated her constitutional rights by giving Van Horn assistance in pursuing child support claims in California, despite knowing that those claims were "baseless and fraudulent."  Amd. Compl. at 22, ¶ 9.  Count Three seeks relief under 42 U.S.C. § 1983.

Notably, Plaintiff did not state any claim against Defendant Pennsylvania Board of Child Support Enforcement.  Since Plaintiff readily acknowledges this point and does not object to the Board's dismissal, see Docket No. 14, the Court grants the Board's Motion to Dismiss.

6

The remaining Defendants have all moved to dismiss the Amended Complaint on various grounds.  With all parties having briefed the issues, the Motions are ripe for review.[1]

## II.     STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint or portions of a complaint may be dismissed for lack of subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In a facial attack, all allegations in the complaint are considered true; whereas in the second type of attack, the court does not presume the truth of the allegations and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Id.  In such a case, "the court can consider affidavits attached to the moving papers or even require such affidavits to be submitted."  New Hope Books, Inc. v. Farmer, 82 F. Supp. 2d 321, 324 (D.N.J. Jan. 13, 2000) (citing Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1281 n.4 (3d Cir. 1993)).  Furthermore, the plaintiff has the burden of proving that the court has subject matter jurisdiction.  Mortensen, 549 F.2d at 891.  If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice.  In re Orthopedic "Bone Screw" Prod. Liab. Litig., 132 F.3d 152, 155-56 (3d Cir. 1997).

---

[1] Curiously, Plaintiff did not cite a single case, statute, regulation or otherwise in any of her briefs in opposition.

Also notable, neither Plaintiff nor Defendant Van Horn complied with Local Civil Rule 7.2(b), which requires that all briefs include a table of contents and a table of authorities.  These tables assist the Court in using and understanding the briefs and should be included in all future filings in the District of New Jersey.

Alternatively, under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

## III.   DISCUSSION

While the remaining two Motions assert various grounds for dismissal, they are unified in asserting that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine.  See Docket No. 11 at 20; Docket No. 18 at 11.  Lowe and DCSS also argue lack of jurisdiction

on Eleventh Amendment grounds, see Docket No. 11 at 5-7, while Van Horn argues lack of

jurisdiction based on the domestic relations exception to diversity jurisdiction.  See Docket No.

18 at 9.  Since subject matter jurisdiction is a threshold requirement for consideration of the

sufficiency of the underlying claims, the Court's analysis begins there.

      **A.**      **Rooker-Feldman**

      The Rooker-Feldman doctrine prevents lower federal courts from exercising subject

matter jurisdiction over cases brought by "[1] state-court losers [2] complaining of injuries

caused by state-court judgments [3] rendered before the district court proceedings commenced

and [4] inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v.

Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Purpura v. Bushkin, Gaimes, Gains, Jonas

& Stream, 317 Fed. Appx. 263, 265 (3d Cir. 2009) (quoting same), cert. denied, 130 S. Ct. 94

(2009).  In other words, lower federal courts are prevented from exercising appellate jurisdiction

over final state-court judgments.  Lance v. Dennis, 546 U.S. 459, 463 (2006).  Jurisdiction in

these circumstances lies exclusively with the United States Supreme Court.  Id.

      The Rooker-Feldman doctrine is a narrow doctrine that applies in only the limited

circumstances described above.  See Exxon, 544 U.S. at 291.  Thus, the doctrine does not

preclude a district court from exercising jurisdiction where a party attempts to assert a claim

previously litigated in state court: "If a federal plaintiff 'present[s] some independent claim,

albeit one that denies a legal conclusion that a state court has reached in a case to which he was a

party . . ., then there is jurisdiction and state law determines whether the defendant prevails under

principles of preclusion.'"  Id. at 293 (quoting GASH Assocs. v. Village of Rosemont, Ill., 995

F.2d 726, 728 (7th Cir. 1993)).

9

Under these standards, Plaintiff's claims for relief in Count One are clearly beyond the Court's subject matter jurisdiction. First, Plaintiff lost her claim in California that she did not owe child support to Van Horn. Second, Count One largely seeks redress for injuries from the California judgment, namely the restoration of monies paid and an order reversing the California court's determinations. Third, the adverse judgment was entered before the present claim was commenced in this Court. Finally, to enter the requested judgments, the Court would be required to review and invalidate the California court's ruling – in effect, to reverse the judgment of the court. Under these circumstances, this Court lacks subject matter jurisdiction and Defendants' Motions under Rule 12(b)(1), facially attacking subject matter jurisdiction, are granted as to Count One.[2]

However, the Rooker-Feldman doctrine does not preclude subject matter jurisdiction over Counts Two and Three. In Count Two, Plaintiff claims that Van Horn fraudulently sought and received child support through misrepresentations to the California courts. Plaintiff's claim in this Count is not that she was injured by the California court's judgment, but that she was injured by Van Horn's fraudulent procurement of the judgment. Fraud in the procurement of a judgment

---

[2] Even if the Rooker-Feldman doctrine did not preclude the Court's jurisdiction over Count One, subject matter jurisdiction would be barred by the domestic relations exception to federal diversity jurisdiction. See Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992) (holding domestic relations exception precludes subject matter jurisdiction over diversity cases involving the issuance of divorce, alimony, or child custody decrees); Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (holding same). Plaintiff's requested relief in Count One is in effect a request for a support order, which this Court cannot grant. See Donohue v. Pataki, 28 Fed. Appx. 59, 60-61 (2d Cir. 2002) (holding district court lacked subject matter jurisdiction to invalidate or otherwise review child support order).

is an "independent claim" that is not barred by Rooker-Feldman.[3]  See McCormick v.

Braverman, 451 F.3d 382, 392 (6th Cir. 2006) (holding plaintiff asserted independent claim

where alleged state-court judgment was procured by fraud); Capoferri v. Capoferri, No. 04-4716,

2005 WL 1607407, *3 (D.N.J. July 1, 2005) (holding same).  Likewise, in Count Three, Plaintiff

seems to allege that Lowe and DCSS assisted Van Horn in his fraudulent procurement of a

judgment against her.  This claim, though couched as a § 1983 claim, is still an independent

claim that does not appear to seek appellate review of any state-court decision.  While Counts

Two and Three may be subject to preclusion, they are not barred for lack of subject matter

jurisdiction under Rooker-Feldman.

###   B.   Count Two: Preclusion

Count Two is brought only against Van Horn.  His alternative argument to lack of subject

matter jurisdiction is that Count Two is barred under the doctrine of res judicata.[4]  See Docket

---

[3] Count Two is also not barred by the domestic relations exception since Plaintiff is not seeking issuance of a divorce, alimony, or child custody decree.  See Ankenbrandt, 504 U.S. at 704.

[4] As is relevant to his preclusion argument, Van Horn asks the Court to consider eight documents that were neither attached to nor relied on in the Amended Complaint: 1) a Verified Complaint filed in the Superior Court of New Jersey by Frame; 2) Van Horn's brief in support of a motion to dismiss the Verified Complaint; 3) an Order Dismissing the Verified Complaint; 4) Frame's Notice of Motion for Court Order; 5) an Order Dismissing the Motion; 6) Frame's Notice of Motion to Vacate Foreign Judgment; 7) Van Horn's brief in opposition to Frame's motion; and 8) Frame's letter to the Superior Court to withdraw the motion.  See Docket No. 18 at 5-6, Exs. H-O.

In considering a motion to dismiss, the court generally may not consider matters "extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  However, the court may consider a "'document *integral to or expressly relied* upon in the complaint'" without converting the motion to dismiss to a summary judgment motion.  Id. (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); accord Pension Ben. Guar. Corp. v. White Consol. Industries, 998 F.2d 1192, 1196 (3d Cir. 1993).  A court may also consider matters of public record.  Id.  With a res judicata defense in particular, a

No. 18 at 7.  Plaintiff argues that Count Two is not barred because no court has ever considered the present claim for fraud/misrepresentation.  <u>See</u> Docket No. 21 at 2-3.  The Court finds that Count Two is not barred by res judicata.

Res judicata, or claim preclusion, bars a subsequent suit where there has been "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies."  <u>E.E.O.C. v. U.S. Steel Corp.</u>, 921 F.2d 489, 493 (3d Cir. 1990).  The defense prevents litigation of grounds for recovery that were previously available, even if not asserted. <u>Brown v. Felsen</u>, 442 U.S. 127, 131 (1979).  In fact, even if a plaintiff is not aware of a claim's existence at the time of the prior suit, it is nevertheless barred.  <u>See</u> <u>Harnett v. Billman</u>, 800 F.2d 1308, 1313 (4th Cir. 1986); <u>Harrington v. Lauer</u>, No. 93-3166, 1995 WL 569619, at *4 (D.N.J. May 17, 1995).  By barring re-litigation of previous grounds for recovery, res judicata "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes."  <u>Brown</u>, 442 U.S. at 131.

Whether subsequent suits involve the same claim does not depend on the legal theory invoked, but rather "'the essential similarity of the underlying events giving rise to the various legal claims.'"  <u>Elkadrawy v. Vanguard Group, Inc.</u>, 584 F.3d 169, 173 (3d Cir. 2009) (quoting <u>Davis v. U.S. Steel Supply</u>, 688 F.2d 166, 171 (3d Cir. 1982)); <u>Lubrizol Corp. v. Exxon Corp.</u>, 929 F.2d 960, 963 (3d Cir. 1991).  In making this determination, the court must focus on three

court can only consider the defense on a motion to dismiss if it is apparent on the face of the complaint; that is, if the court can determine the merits of the defense by considering only those extraneous documents listed above.  <u>Cf.</u> <u>Brody v. Hankin</u>, 145 Fed. Appx. 768, 771-72 (3d Cir. 2005).  In this instance, the Court finds that the documents Van Horn asks be considered are matters of public record and may be properly considered without converting the motion. Moreover, as a procedural matter, since Van Horn's preclusion argument is otherwise rejected even with these documents, whether they are properly before the Court is moot.

things: "'[1] whether the acts complained of were the same, [2] whether the material facts alleged in each suit were the same and [3] whether the witnesses and documentation required to prove such allegations were the same.'"  Elkadrawy, 584 F.3d at 173 (quoting United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984)).

Van Horn argues that three different proceedings satisfy the above standards.  In the first, Plaintiff filed a Verified Complaint in 1999 in the Superior Court of New Jersey, Chancery Division-Family Part, Docket No. FM-04-640-00.  See Docket No. 18, Ex. H.  The Verified Complaint contains nearly identical allegations to the present Amended Complaint.  Compare Docket No 18, Ex. H at ¶¶1-45, with Amd. Comp. at ¶¶ 1-52.  Notably for purposes of the fraud claim in Count Two, Plaintiff alleged in the 1999 Verified Complaint as follows: "In 1998, defendant again filed papers in the California Courts in an effort to further extort monies from plaintiff with full knowledge that the marital children resided with plaintiff and knowing that neither New Jersey nor Pennsylvania would recognize any support orders which listed plaintiff as obligee[.]"  Docket No. 18, Ex. H at ¶ 40.  A nearly identical allegation appears in the Amended Complaint.  See Amd. Compl. at ¶ 50.[5]  The 1999 Verified Complaint was ultimately dismissed pursuant to a motion by Van Horn, see Docket No. 18, Ex. I, for lack of subject matter and personal jurisdiction.  See Docket No. 18, Ex. J.  The motion was granted without prejudice; however, the judge hand-wrote on the order that it would be granted with prejudice if Plaintiff did not file a motion for reconsideration within ten days.  See Docket No. 18, Ex. J.  Whether or

---

[5] "In or around July 1998, Former Husband again filed papers in California in an effort to further extort monies from Plaintiff with full knowledge that the marital children resided with Plaintiff; knowing that neither New Jersey nor Pennsylvania would recognize any support Orders which listed Plaintiff as the Obligee."  Amd. Compl. at ¶ 50.

not Plaintiff ever did file such a motion is unclear on the record (though Van Horn asserts that the motion was never filed, see Docket No. 18 at 6).

The second proceeding occurred in 2001 when Plaintiff filed a Notice of Motion for Court Order in the Superior Court of New Jersey, Chancery Division-Family Part, Docket No. FD04-957-01.  See Docket No. 18, Ex. K.  The Motion sought relief from the California orders, and substantially mirrored the relief sought in the Amended Complaint in Count One.  Compare See Docket No. 18, Ex. K, with Amd. Compl. at ¶ 70.  The Superior Court denied the motion, though the Order attached to Van Horn's brief does not explain the court's reasoning.  See Docket No. 18, Ex. L.

Finally, the third proceeding occurred in 2002 when Plaintiff, acting pro se, filed a Motion to Vacate Foreign Judgment in the Superior Court of New Jersey, Law Division-Special Civil Part, Docket No. DJ-238960-99.  See Docket No. 18, Ex. M.  The motion in large part rehashed Plaintiff's belief that she did not owe child support arrears in California.  See Docket No. 18, Ex. M.  Among other things, she stated: "Because Mr. Van Horn never fully disclosed to this Court his duplicity of efforts to seek child support in both Pennsylvania and California . . . the Courts have been blind-sided and deliberately misinformed at my expense and ultimately the expense of the children."  See Docket No. 18, Ex. M at 10, ¶24.  Van Horn filed a brief in opposition to the motion in which he argued, inter alia, that the claim was barred by collateral estoppel.  See Docket No. 18, Ex. N at 1.  Ultimately Plaintiff voluntarily withdrew the motion. See Docket No. 18, Ex. O.

These three proceedings do not satisfy the elements of claim preclusion since none of them were a final judgment on the merits.  For purposes of preclusion, a dismissal on the basis of

lack of subject matter jurisdiction is not decision on the merits.  See In re Orthopedic "Bone

Screw" Prods. Liab. Litig., 132 F.3d 152, 155 (3d Cir. 1997); Kulick v. Pocono Downs Racing

Ass'n, 816 F.2d 895, 898 n.6 (3d Cir. 1987).  A dismissal on that basis permits the party to

"reassert his claim in any competent court."  Id.  Likewise, a dismissal for lack of personal

jurisdiction is not a decision on the merits.  See Compagnie Des Bauxites De Guinee v. L'Union

Atlantique S.A. d'Assurances, 723 F.2d 357, 360 (3d Cir. 1983); Saudi v. Acomarit Maritimes

Servs., S.A., 114 Fed. Appx. 449, 454 (3d Cir. 2004) (citing Compagnie).  Here the first

proceeding was dismissed on the basis of lack of subject matter and personal jurisdiction, which

is not a judgment on the merits.  While the order also says that it will be dismissed with prejudice

should Plaintiff not file a motion for reconsideration, whether she did or not is not apparent on

the face of the Amended Complaint, and even if it were, the Third Circuit has been clear in its

aversion to giving preclusive effect to jurisdictional decisions.  See Onyiuke v. New Jersey, 242

Fed. Appx. 794, 797-98 (3d Cir. 2007) (remanding case dismissed for lack of subject matter

jurisdiction for court to enter judgment without prejudice).  Thus, the first proceeding does not

preclude the fraud claim in Count Two.

Similarly, neither the second nor third proceeding have preclusive effect.  The basis for

the second judgment is not stated in the supplied exhibit.  The third proceeding was voluntarily

withdrawn, and does not seem to have been withdrawn with prejudice.  Thus, neither of these

proceedings suffices for a judgment on the merits.[6]

---

[6] The Court is not certain whether any of the California proceedings underpinning this
dispute provide preclusive effect.  However, since Defendant Van Horn has not pointed to any
such proceeding in his brief, the Court declines to engage in a *sua sponte* analysis.

Finding no other objections to the Amended Complaint,[7] the Court therefore denies Defendant Van Horn's Motion to Dismiss as to Count Two.

### C.    Count Three

In Count Three, Plaintiff alleges a claim under 42 U.S.C. § 1983 against Phil Lowe and DCSS.  Specifically Plaintiff alleges that these Defendants assisted Van Horn in successfully seeking child support to which he was not entitled, despite knowing that his claims were "baseless and fraudulent."  Amd. Compl. at 22, ¶ 9.  Lowe and DCSS have taken a buckshot approach to the Amended Complaint and argue that the claims against them should be dismissed on several grounds:

(1) Eleventh Amendment immunity (Rule 12(b)(6));[8]

(2) Phil Lowe is entitled to prosecutorial immunity (Rule 12(b)(6));

(3) Phil Lowe is entitled to qualified immunity (Rule 12(b)(6));[9]

(4) Phil Lowe is not a "person" under § 1983 (Rule 12(b)(6));

(5) Plaintiff has not pled Lowe's personal involvement in any constitutional violation

---

[7] Interestingly, Van Horn did not move to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  Given Van Horn's otherwise consistent objection to personal jurisdiction in New Jersey in opposition to Plaintiff's state court actions, see Docket No. 18, Ex. I, one would have expected such a motion here.  Nevertheless, since such a motion was not made, it is now waived. See Fed. R. Civ. P. 12(h)(1).

[8] Though Defendants Lowe and DCSS have moved to dismiss the Complaint under Rule 12(b)(6) on Eleventh Amendment grounds, a claim asserting such immunity is really a claim of lack of jurisdiction that should be advanced under Rule 12(b)(1).  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n.2 (3d Cir. 1996).  Thus, the Court will treat it as such.

[9] Both qualified immunity and prosecutorial immunity are properly asserted under Rule 12(b)(6) rather than 12(b)(1).  See Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008) (prosecutorial immunity); Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (qualified immunity).

16

(Rule 12(b)(6));

(6) lack of personal jurisdiction over Lowe and DCSS (Rule 12(b)(2)); and

(7) improper venue (Rule 12(b)(3)).[10]

See Docket No. 11 at 4-25.  Because the Court's inquiry into most of these defenses is limited by a threshold finding of subject matter and personal jurisdiction, the analysis below is limited to the Eleventh Amendment immunity defense and the lack of personal jurisdiction defense.

On those fronts, Plaintiff "concedes that [DCSS] may be entitled to the protections of the 11th Amendment," but argues that Lowe is not because of his willful prosecution of Plaintiff, despite knowing that Van Horn's claims were fraudulent.  See Docket No. 16 at 4.  As to personal jurisdiction, Plaintiff argues that Lowe's and DCSS's actions caused her harm in New Jersey, thus they are subject to this Court's jurisdiction.  See Docket No. 16 at 5.  The Court finds that neither of these Defendants is entitled to Eleventh Amendment immunity on the record as presented, but does find that the Court lacks person jurisdiction over both of them.  Thus, their Motion to Dismiss under Rule 12(b)(2) will be granted.

### 1.   Eleventh Amendment Immunity as to Lowe and DCSS

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."  As a general proposition, a suit by private parties seeking to impose liability that must be paid from the state treasury is barred from federal court,

---

[10] Defendants Lowe and DCSS also argued lack of subject matter jurisdiction under Rule 12(b)(1) under the Rooker-Feldman doctrine, but those claims were addressed above.

unless immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  Although the Eleventh Amendment only refers to "States," certain state agents and state instrumentalities are entitled to immunity as well.  Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  In particular, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).

Eleventh Amendment immunity thus arises when the state is the real party in interest, even though it has not been named as a party defendant.  See Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989).  In determining whether an entity is really a proxy for the state, a court must apply the following three-part test: (1) whether the payment of the judgment would come from the state, (2) what status the entity has under state law, and (3) what degree of autonomy the entity has.  Id. (citing Urbano v. Bd. of Managers of New Jersey State Prison, 415 F.2d 247, 251-52 (3d Cir. 1969)).

As to DCSS, though it seems as if Plaintiff concedes that DCSS is entitled to Eleventh Amendment immunity, the Court is not as certain.  Under California law, it seems clear that were the defendant here the California Department of Child Support Services, immunity would be proper.  See Greenlaw v. County of Santa Clara, 125 Fed. Appx. 809, 810 (9th Cir. 2005).  However, the defendant here is the *San Luis Obispo County* Department of Child Support Services.  Seemingly no court has previously determined whether this entity, or one of its sister county departments, is immune from suit.  This is not remarkable since child support services

18

were reorganized under California law effective July 2002.  See Lowe Declaration at ¶ 3; Cal.

Fam. Code § 17200.

Thus, the Court must apply the three general factors from Fitchik to determine whether

DCSS is immune.  Unfortunately, DCSS has provided painfully little information for the Court's

inquiry.  In fact, DCSS's entire briefing on these factors is limited to a single paragraph wherein

it relies exclusively on Phil Lowe's declaration for support.  See Docket No. 11 at 7.  For its part,

DCSS asserts that it is funded by the State of California and is under the direction and

management of the State.  See Docket No. 11 at 7; Lowe Declaration at ¶ 7.  DCSS further

asserts that it has limited powers and acts under the discretion of the State.  See Docket No. 11 at

7; Lowe Declaration at ¶¶ 6-7.  The Lowe Declaration attaches California Family Code § 17200

and § 17400, which clearly describe the creation and authority of county departments of child

support services.

However, this information does not fully convince the Court as to the status of the first

and second factors under Fitchik: whether the payment of a judgment would come from the state,

and what status DCSS enjoys under state law.  As to the first factor, even accepting Lowe's

declaration as true, just because DCSS receives much of its funding from the state does not mean

the first factor is satisfied.  Under the Eleventh Amendment, the inquiry is more into the state's

*obligation* to contribute, rather than the *size* of its contribution.  Fitchik, 873 F.2d at 660.  DCSS

has not directed the Court's attention to any information on this front other than a conclusory

statement from Lowe that "[i]f any judgment were imposed against [DCSS] arising out of

plaintiff's claims, [DCSS] would make a claim against the State of California to pay that

judgment."  Lowe Declaration at ¶ 9.  As to the second factor, while the cited statutes and the

19

Court's own supplemental review of California Family Code § 17304 suggest that DCSS is not totally independent, these statutes are far from completely convincing.  For example, as suggested by <u>Fitchik</u>, DCSS has not shown how state law treats it generally, if it can sue or be sued in its own right, and whether it is immune from taxation.  873 F.2d at 659.  In sum, while the Court believes that DCSS can perhaps show that it is really an arm of the state, such a showing has not been made here.

Therefore, for the present purpose of the Motion to Dismiss for lack of subject matter jurisdiction under the Eleventh Amendment, the Court must deny DCSS's Motion, but will do so without prejudice.

In light of the above conclusion, Lowe's argument that he is entitled to Eleventh Amendment immunity for his actions in his official capacity is perforce invalid.  He cannot claim he was acting as a state official if the entity for which he was acting is not a state entity.  Therefore, the Court must also deny without prejudice his Motion to Dismiss for lack of subject matter jurisdiction.

## 2.    Personal Jurisdiction

Notwithstanding the above conclusions, the Court finds that it otherwise lacks personal jurisdiction over Defendants Lowe and DCSS.  These Defendants argue that all of the underlying events supporting the claims against them took place in California and the only allegation against them is that they assisted Van Horn in collecting California arrears.  <u>See</u> Docket No. 11 at 17.  Plaintiff counters, without evidence of any kind, that this Court has jurisdiction over these Defendants because they have caused her to suffer damages in New Jersey.  <u>See</u> Docket No. 16 at 5.  However, Plaintiff has failed her burden to demonstrate personal jurisdiction.

20

Once a defendant raises lack of personal jurisdiction, the plaintiff bears the burden of showing that personal jurisdiction exists.  Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007).  A plaintiff must meet that burden with affidavits or other competent evidence showing that jurisdiction is proper.  Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). Where a court does not hold an evidentiary hearing on personal jurisdiction, the plaintiff need only state a prima facie case.  Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry.  First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction.  Second, the court must apply the principles of due process.  Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998)  In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, and so New Jersey courts look to federal law for the interpretation of the limits on personal jurisdiction.  Id.

Personal jurisdiction under the Due Process Clause depends on the "relationship among the defendant, the forum, and the litigation."  Imo Indus., 155 F.3d at 259.  Physical presence within the forum is not required; instead, the plaintiff must show that the defendant purposefully directed his activities toward the residents of the forum state, or otherwise "purposefully availed [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Personal jurisdiction can be either in the form of "specific jurisdiction" or "general

21

jurisdiction." If the plaintiff's cause of action relates to or arises out of the defendant's contacts with the forum, the court is said to exercise "specific jurisdiction." Id. If the plaintiff's claim does not arise out of the defendant's contacts with the forum, the court is said to exercise "general jurisdiction"; under general jurisdiction, the contacts must be shown to be "continuous and systematic." Id. at 259 n.2. In this dispute, Plaintiff seemingly concedes that her claim is not based on general jurisdiction, see Docket No. 16 at 5 ("While this may not give rise to an exercise of General jurisdiction . . ."), and the Court otherwise finds that these Defendants lack continuous and systematic contacts with this forum.

Determining specific jurisdiction involves a three part inquiry. Marten, 499 F.3d at 296. First, the defendant must have "purposefully directed his activities at the forum." Id. (internal quotations removed). Second, the plaintiff's claim must "'arise out of or relate to' at least one of those specific activities." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Third, courts may consider "additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice." Id. (internal quotations and modification removed).

If a plaintiff cannot satisfy these steps for traditional specific jurisdiction, the plaintiff may nevertheless be able to show personal jurisdiction under the "effects test"; a different but similar base for jurisdiction. Id. at 297. A court has jurisdiction under the effects test where the plaintiff shows three things:

(1) The defendant committed an intentional tort;[11]

---

[11] Though Plaintiff states a § 1983 claim against Lowe and DCSS, a court can exercise personal jurisdiction under the effects test over an out-of-state defendant for such claims. Cf. Marten, 499 F.3d at 298-99 (applying effects test to plaintiff's § 1983 retaliation claim).

(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id.  A plaintiff must satisfy the expressly aimed element first before a court need consider the other two factors.  Id.  The expressly aimed element is met when the plaintiff demonstrates that "'[1] the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and [2] point[s] to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'"  Id. (quoting IMO Indus., 155 F.3d at 266).

In this dispute, Plaintiff simply has not met her burden to state a prima facie case of personal jurisdiction.  Defendants Lowe and DCSS raised personal jurisdiction in their Motion and supported it with the Lowe Declaration, wherein he attests in effect that DCSS conducts no business in the state of New Jersey.  See Lowe Declaration at ¶¶ 10-11.  Plaintiff's response to the Motion is a brief without any supporting affidavits or competent evidence.  On this basis alone, the Court is compelled to grant Defendants' Motion since Plaintiff has not met her evidentiary burden.  Cf. Dayhoff, 86 F.3d at 1302.

However, even assuming that Plaintiff had supplied sufficient competent evidence, she has not demonstrated that this Court has personal jurisdiction over these Defendants.  Plaintiff seems to assert that jurisdiction is proper under the effects test.  See Docket No. 16 at 5 ("Plaintiff has alleged that Movants' actions have caused plaintiff to suffer damages in the State of New Jersey.").  Indeed, Plaintiff cannot show personal jurisdiction under the traditional specific jurisdiction three-part test because nothing in her allegations shows that Lowe or DCSS purposefully directed their activities to New Jersey or purposefully availed themselves of the

protections of New Jersey.  The record seems clear, and seemingly Plaintiff agrees, that the entirety of Lowe's and DCSS's alleged actions took place in California.  While these actions may have had some consequences for Plaintiff here, e.g., damaged credit, see Amd. Compl. at 22, ¶ 12, they are not evidence that these Defendants availed themselves of the protections of this forum.  Indeed, it seems as if the Defendants only availed themselves of the protections of conducting business in the State of California.  Thus, Plaintiff has not shown that this Court has personal jurisdiction over Lowe and DCSS under the traditional specific jurisdiction test.

But as mentioned, Plaintiff's argument really appears based on the effects test. Nevertheless, Plaintiff has not shown jurisdiction under that test either.  Regarding the third element first, Plaintiff has not shown that Lowe and DCSS expressly aimed their conduct at New Jersey.  It is without dispute, after accepting the allegations in the Amended Complaint as true, that these Defendants must have known and could reasonably foresee their actions would have effects here.  However, foreseeability is not enough for personal jurisdiction.  See Marten, 499 F.3d at 297.  Plaintiff has to show specifically that Lowe and DCSS knew she would suffer the brunt of the harm here, and they *specifically intended* to aim their conduct here.  See id. at 297-98.  She has not made that showing.  On the facts alleged, it seems equally likely – if not indeed *more likely* – that these Defendants intended Plaintiff to suffer harm in California.  Nothing in the facts alleged suggests that they had a specific intent to direct their harm beyond California's borders.  Without some evidence, or even an allegation of this intent, this Court does not have personal jurisdiction over Lowe and DCSS.

Therefore, the Court grants Lowe and DCSS's Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Pennsylvania Board of Child Support Enforcement's Motion to Dismiss is **GRANTED**.  Defendant James Van Horn's, Defendant Phil Lowe's, and Defendant DCSS's Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction under the Rooker-Feldman doctrine is **GRANTED** as to Count One and **DENIED** as to Counts Two and Three.  Defendant Van Horn's Motion to Dismiss under Rule 12(b)(6) is **DENIED** as to Count Two.  Defendant Lowe's and Defendant DCSS's Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction under the Eleventh Amendment is **DENIED WITHOUT PREJUDICE**.  Defendant Lowe's and Defendant DCSS's Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction is **GRANTED**.


Date:   2-8-10                                    /s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge

25